[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 22.]

THE STATE EX REL. COBBLE, APPELLANT, *v*. INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Cobble v. Indus. Comm.*, 2001-Ohio-124.]

*Workers' compensation—Retroactive compensation adjustment following an average weekly wage recalculation is limited to the two years prior to the claimant's recalculation motion.*

(No. 99-1872—Submitted March 13, 2001—Decided June 13, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1407.

_____

*Per Curiam.*

{¶ 1} Appellant-claimant, Bobby E. Cobble, was industrially injured on March 24, 1986. Shortly thereafter, claimant submitted information to his workers' compensation claim file indicating that in the year preceding injury he had worked only twenty-seven weeks, missing the other twenty-five weeks due to illness or layoff.

{¶ 2} On February 24, 1987, a claims examiner for appellee Bureau of Workers' Compensation tentatively set claimant's average weekly wage ("AWW") at $136.79, by dividing claimant's total wages for the year prior to injury by fifty-two weeks. That calculation was done on bureau form C-166 and was submitted to the claim file. No formal order from either the bureau or appellee Industrial Commission of Ohio, however, was issued with respect to this AWW calculation. Approximately three months later, the AWW was revised to $183.47 by dividing the total wages by forty weeks. Again, the same form was used and no formal bureau or commission order followed.

{¶ 3} On March 19, 1997, claimant moved the bureau to reset his AWW at $271.82, based upon information that was before the bureau when it originally set

the AWW. Claimant asked that all paid compensation in the claim be adjusted, based upon this new AWW. On March 26, 1997, the bureau issued an order, stating:

"The average weekly wage has been reset according to the information that was mis-calculated in the file. The new AWW has been set at $271.82.

"This BWC Order is based on:

"The information in the file that has been previously calculated at the wrong rate."

{¶ 4} That order was apparently not administratively appealed.

{¶ 5} On April 1, 1998, claimant again asked that all past compensation be adjusted based upon the new calculation. The bureau referred claimant's motion to the commission for adjudication, noting in its referral that previously awarded compensation would not be adjusted for a period of more than two years from the date of the request to reset the AWW. In June 1998, a district hearing officer ("DHO") ordered:

"[T]he C-86 Motion filed by Claimant on 04/01/1998, requesting that all compensation previously paid be adjusted, is denied. The claimant filed a motion on 4/1/98 to reset the Average Weekly Wage. The BWC granted the motion and adjusted the compensation paid back two years. The claimant subsequently filed a motion requesting that any compensation paid since the date of injury also be adjusted. The District Hearing Officer finds that the Industrial Commission has no jurisdiction to make a modification more than two years prior to the date of the request. Therefore, the C-86 is denied.

"This order is based on R.C. 4123.52, Hearing Officer Policy 5.2, the evidence in file and the evidence adduced at hearing."

{¶ 6} On appeal, a staff hearing officer modified the DHO's order to the following extent:

"The Staff Hearing Officer finds that if the evidence was on file at the time of the original application for benefits that this fact would not change the applicability of RC 4123.52 [or of] Hearing Officer Policy 5.2. The claimant did not contest the setting of the Average Weekly Wage by the Bureau of Workers' Compensation on 05/15/1987, and as such this setting of the Average Weekly Wage was encompassed by this rule.

"In all other respects, the District Hearing Officer is affirmed."

{¶ 7} Further appeal was refused.

{¶ 8} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his motion. The court of appeals disagreed and denied the writ.

{¶ 9} This cause is now before this court upon an appeal as of right.

{¶ 10} At issue is the commission's continuing jurisdiction under R.C. 4123.52:

"[T]he commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor."

{¶ 11} The parties agree that this statute controls. They disagree on whether adjustment to all prior compensation offends the two-year bar. The appellees argue that the issue has been conclusively decided by a series of unreported decisions from the Court of Appeals for Franklin County. These cases[1] cited by appellees have uniformly held that retroactive compensation adjustment following an AWW recalculation is limited to the two years prior to the claimant's recalculation motion. Claimant and *amicus curiae* seek to distinguish these cases, while offering competing theories in support of their position.

---

1. *State ex rel. Durst v. Indus. Comm.* (Mar. 12, 1998), Franklin App. No. 97APD02-283, unreported; *State ex rel. May Dept. Stores Co. v. Indus. Comm.* (Oct. 30, 1990), Franklin App. No. 88AP-1035, unreported; and *State ex rel. Lloyd v. Indus. Comm.* (Apr. 22, 1997), Franklin App. No. 96APD03-333, unreported, affirmed (1998), 84 Ohio St.3d 224, 702 N.E.2d 1205.

**{¶ 12}** The distinctions proposed by claimant and *amicus* are inconsequential. The more critical question—which claimant does not clearly pose but which may be inferred from his argument—is what constitutes an "application." Claimant asserts that the point from which to measure the two-year period is not, as the commission found, his 1997 recalculation motion. It is, instead, he urges, the date when he first provided the correct information to the bureau in conjunction with his original application for temporary total disability benefits.

**{¶ 13}** This is an argument unique to this case. In the unreported appeals court decisions cited by appellees, the parties did not dispute that the date of the formal motion is the proper measuring point if the statute of limitations is to be applied and clearly did not offer an earlier "application" as an alternate yardstick. They instead devoted their efforts solely—and unsuccessfully—to creating a judicial exception to R.C. 4123.52's language.

**{¶ 14}** This distinction, however, is only as consequential as the merits of claimant's proposition. In advocating the 1987 application/wage evidence date as the benchmark, claimant argues that (1) the AWW figure proposed in the formal 1997 motion was supported not by new evidence but by the wage evidence that the bureau has had in its possession for a decade, and (2) inherent in the evidentiary submission was a request that the AWW be properly set. He additionally stresses that, per R.C. 4123.95, statutes must be liberally construed in his favor.

**{¶ 15}** While the term "application" is undefined by pertinent Revised or Administrative Code sections, clearly a petition or request for a specific act— whether on a bureau/commission form or as a motion—is an "application." Moreover, given the liberal-construction mandate, surely, in some instances, the definition of "application" can be less rigid.

**{¶ 16}** We find it unnecessary, however, to proceed with this analysis in this case based on claimant's delay in seeking redress. In *State ex rel. Welsh v. Indus. Comm.* (1999), 86 Ohio St.3d 178, 712 N.E.2d 749, Welsh began drawing

temporary total disability compensation in 1987. Because Welsh was also receiving money from his employer via a qualifying sickness-and-accident insurance plan, the bureau was statutorily required to offset that amount. The employer quit paying sickness and accident benefits on July 12, 1990, yet the bureau continued to deduct those benefits from Welsh's temporary total compensation until December 13, 1993.

{¶ 17} On September 18, 1995, Welsh moved for recoupment of the improper deduction from July 13, 1990 through December 13, 1993. The commission granted the motion only in part, finding that because of R.C. 4123.52's two-year statute of limitations, claimant was eligible for reimbursement only from September 18, 1993 through December 13, 1993. Any recovery prior to that period was barred by the two-year rule.

{¶ 18} The court of appeals vacated the commission's order, finding that the statute of limitations did not apply because Welsh had asked only for enforcement of the commission's temporary total disability award, not for a modification. We, in turn, reversed the lower court and reinstated the commission's order.

{¶ 19} We found that R.C. 4123.52 indeed applied. We relied most heavily, however, on claimant's delay in asserting his rights, writing:

"When his employer stopped paying him insurance benefits, Welsh could have moved immediately to change the standard for BWC's compliance. But despite having been shorted each week beginning on July 12, 1990, he did not promptly pursue his right to be paid all two-thirds of his AWW. In fact, he waited more than five years before moving the commission to issue another order.

"Welsh has not asserted any exception to the rule, inherent in R.C. 4123.52, that a claimant must act diligently to secure compensation by commission order. And R.C. 4123.52 explicitly states the penalty for a claimant's inaction—any award will be limited to the two years preceding his or her application for it. Here, the

commission ordered some compensation, and Welsh applied for more compensation over five years after he became entitled to it. The commission, therefore, properly restricted Welsh's relief to the two years before his motion. For these reasons, the court of appeals' judgment is reversed, and a writ of mandamus ordering the commission to vacate its order partially denying Welsh's motion for TTD is denied." *Id*. at 180, 712 N.E.2d at 751.

{¶ 20} Thus, regardless of which document(s) constituted the "application" for an AWW of $271.82, the fact remains that claimant waited ten years before seeking to correct the error. In response, claimant and *amicus* emphasize the lack of a "formal" commission/bureau order following the original AWW calculation in 1987. This emphasis, however, ignores the bureau's two informal AWW orders and the claims examiner's calculation sheets that clearly indicated the amount and method of calculation, all of which were in claimant's workers' compensation file from the very beginning. Certainly, claimant had some idea of the anticipated amount of his AWW based on the figures he provided. When the AWW came in at approximately $100 less per week, claimant should have known that something was potentially wrong, and could have consulted the bureau calculation sheets in his file *at that time*. Instead, claimant waited ten years before taking any corrective measures.

{¶ 21} *Welsh* not only seriously undermines claimant's argument, it wholly negates the argument of *amicus*. *Amicus* proposes that back payment does not result in an "award" of compensation, but merely an "adjustment" to compensation previously paid. *Welsh* has, however, effectively dispensed with any semantics over whether a monetary disbursal is an "award," an "enforcement," an "adjustment," or a "modification."

{¶ 22} Claimant and *amicus* rely heavily on the fairness factor in advocating their position, stressing that the diminished AWW resulted from agency, not claimant, error. Claimant and *amicus* are correct in stating that the error originated

with the bureau. Again, however, claimant had ten years to fix the problem. He is not without accountability.

{¶ 23} Finally, claimant maintains that due process was violated when the bureau computed his initial AWW without giving him an opportunity for a hearing to contest this decision. Claimant ignores, however, that he could have had a hearing at any time after the AWW was set simply by petitioning the commission. Claimant, in fact, eventually did so, but only after waiting ten years. His ability to have mitigated or even eliminated his loss seriously diminishes any perceived due process violation, as the court of appeals found.

{¶ 24} The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A., James A. Whittaker* and *Stephen P. Gast*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellees.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging reversal for *amicus curiae*, Ohio AFL-CIO.

_____