[Cite as *State ex rel. Bennett v. Indus. Comm.*, 2016-Ohio-83.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Flora Bennett, | : | |
| Relator, | : | |
| v. | : | No. 14AP-632 |
| Aldi, Inc., Ohio and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 12, 2016

*Ronald E. Slipski* and *Charles Oldfield,* for relator.

*Weston Hurd, LLP,* and *Michael J. Spisak,* for respondent Aldi, Inc., Ohio.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, P.J.

{¶ 1} Relator, Flora Bennett, filed this original action, naming as respondents the Industrial Commission of Ohio ("commission"), and her employer, Aldi, Inc., Ohio ("Aldi"). Relator requests a writ of mandamus ordering the commission to vacate its order granting the request of Aldi for reconsideration, to reinstate the order of the staff hearing officer ("SHO"), and to award permanent total disability ("PTD") compensation to her.

{¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court grant the writ of mandamus.

{¶ 3} The commission sets forth one objection to the magistrate's decision:

> The magistrate erred in substituting her judgment for that of the commission on factual matters by finding the SHO had relied on only the non-defective portion of Dr. Novak's report.

{¶ 4} Aldi sets forth three objections to the magistrate's decision:

> 1. The SHO should not have relied upon Mr. Ruth's report to evaluate Bennett's non-medical disability factors.
>
> 2. The SHO incorrectly applied Dr. Gade-Pulido's conclusions.
>
> 3. The SHO did not discuss Bennett's failure to attempt vocational rehabilitation.

{¶ 5} Neither the commission nor Aldi objects to the magistrate's findings of fact and, therefore, we adopt them as our own.

{¶ 6} To obtain a writ of mandamus, a relator must demonstrate that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541. "To show the clear legal right, relator must demonstrate that the commission abused its discretion by entering an order unsupported by some evidence in the record." *State ex rel. Hughes v. Goodyear Tire & Rubber Co.*, 26 Ohio St.3d 71, 73 (1986). When the record contains "some evidence" to support the commission's factual findings, a court may not disturb the commission's findings in mandamus. *State ex rel. Fiber-Lite Corp. v. Indus Comm.*, 36 Ohio St.3d 202 (1988), syllabus. " 'Where a commission order is adequately explained and based on some evidence, * * * the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997).

{¶ 7} R.C. 4123.52 governs the continuing jurisdiction of the industrial commission, providing that "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or

orders with respect thereto, as, in its opinion is justified." However, "[c]ontinuing jurisdiction is not unlimited." *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998), citing *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538 (1992). The commission may exercise continuing jurisdiction where one of the following prerequisites is present: "(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by inferior tribunal." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15, citing *Nicholls* at 459.

{¶ 8}  In *Gobich*, the Supreme Court of Ohio provided further instruction on the applicability of the commission's continuing jurisdiction:

> The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. This means that the prerequisite must be both identified and explained.  It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked.

(Internal citations omitted.) *Id.* at ¶ 15.  *See also State ex rel. Robertson v. Indus. Comm.*, 10th Dist. No. 05AP-479, 2006-Ohio-3553, ¶ 14. Thus, we must consider whether the commission clearly identified and explained the prerequisite for its exercise of continuing jurisdiction. *Gobich* at ¶ 15. When the commission identifies a clear mistake of law as the basis for its continuing jurisdiction we must consider: "(1) Was there a mistake? (2) If so, was it clear?" *Id.* at ¶ 17.

{¶ 9}  The commission's exercise of continuing jurisdiction is subject to abuse-of-discretion review. *State ex rel. Allied Sys. Holdings v. Donders*, 10th Dist. No. 11AP-960, 2012-Ohio-5855, ¶ 6, citing *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 131 Ohio St.3d 231, 2012-Ohio-542. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 10} In its September 28, 2013 order, the commission stated that it was exercising continuing jurisdiction based upon a clear mistake of law. Spefically, the commission found that the SHO's "reliance on the 07/24/2012 report of Glen Novak,

D.O., was improper, as Dr. Novak used an incorrect standard for assessing whether the Injured Worker is capable of sustained remunerative employment, by finding the Injured Worker could not work an eight hour a day/40 hour a week job."

{¶ 11} In its objection, the commission argues that the magistrate erred by substituting her judgment for that of the commission by finding that the SHO only relied on the non-defective portion of Dr. Novak's report. In support of this contention, the commission argues that "[i]t is quite clear that the SHO made a mistake of law in relying upon a doctor's opinion that was based upon an incorrect legal standard, as the commission found." (Commission's Objection, 4.)

{¶ 12} None of the parties dispute that Dr. Novak applied the incorrect standard in assessing whether relator was capable of performing sustained remunerative employment. However, the record does not reflect that the SHO applied the standard used by Dr. Novak in determining whether relator was capable of performing sustained remunerative employment. Indeed, contrary to the finding of Dr. Novak that relator was incapable of performing work on an eight-hour day, five-days-a-week basis, the SHO found, based on the reports of Drs. Novak, Kepple, and Gade-Pulido, that relator "may be able to engage in sustained remunerative employment." (SHO's Order, 2.) Based on this finding, the SHO stated that "an analysis of * * * non-medical factors is necessary." (SHO's Order, 2.) Had the SHO accepted as dispositive the conclusion of Dr. Novak that relator was incapable of performing work based upon the incorrect standard, there would have been no need for the SHO to examine the non-medical factors. *See State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 320 (1994) (finding that the commission must thoroughly consider non-medical factors "where a claimant's medical capacity to do work is not dispositive"); Ohio Adm.Code 4121-3-34(D)(2)(b) ("If, after hearing, the adjudicator finds that injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.").

{¶ 13} Thus, because the SHO did not apply the incorrect standard used by Dr. Novak and did not accept the conclusion of Dr. Novak that was based upon that incorrect standard, we cannot agree with the commission that the SHO's order contained a mistake

of law or that such mistake is clear on the face of the SHO's order. *Gobich* at ¶ 14-17. Further, contrary to the commission's argument, this conclusion does not disturb the deference ordinarily granted to the commission's factual findings. Rather, our examination of the SHO's order is based upon the duty of a reviewing court to determine whether the commission properly exercised continuing jurisdiction based upon a clear mistake of law. Therefore, after careful and independent review, we find no merit to the commission's objection.

{¶ 14} In its objections to the magistrate's decision, Aldi argues that the SHO (1) should not have relied on Mr. Ruth's report, (2) incorrectly applied the conclusions of Dr. Gade-Pulido, and (3) failed to discuss relator's lack of vocational rehabilitation. While these arguments relate to whether the SHO correctly determined that relator was precluded from all sustained remunerative employment, they do not address the issue before us: whether the commission abused its discretion when it determined that the SHO's decision contained a clear mistake of law by relying on the report of Dr. Novak. The commission could have, but did not, state that the SHO's decision contained a mistake of law based upon the grounds advanced by Aldi in its three objections. Because the commission did not rely on such grounds in order to find that there was a clear mistake of law, we find Aldi's objections to be outside the scope of the present matter and, therefore, without merit. *Gobich* at ¶ 15 (finding that the order must state what the clear error of law is so that the "party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted"). *See also Gwinn v. Ohio Elections Comm.*, 187 Ohio App.3d 742, 2010-Ohio-1587, ¶ 18 (10th Dist.) (finding that, like a court, an agency speaks through its record); *Simmons v. Indus. Comm.*, 134 Ohio St. 456, 457 (1938) ("The Industrial Commission, just as a court, speaks through its record."); *Rummel v. Flowers*, 28 Ohio St.2d 230, 236 (1972); *Cook v. Mayfield*, 45 Ohio St.3d 200, 202 (1989); *Hurless v. Mead Corp.*, 29 Ohio App.2d 264, 269 (4th Dist.1971).

{¶ 15} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's and Aldi's objections, we find that the magistrate has properly determined the pertinent facts and concluded that a writ of mandamus is warranted. We, therefore, overrule the commission's and Aldi's objections to the magistrate's decision and adopt the findings of fact and conclusions of law of the

magistrate, with the exception of the first line of the last sentence of ¶ 40 of the appended magistrate's decision, where we change the reference to "commission" to "SHO," and the first sentence of ¶ 42, which we delete. Accordingly, the requested writ of mandamus is hereby granted, directing the commission to vacate its order granting Aldi's request for reconsideration and to reinstate the order of the SHO awarding relator PTD compensation.

*Objections overruled; writ granted.*

**KLATT and BRUNNER, JJ., concur.**

————————————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Flora Bennett, | : | |
| Relator, | : | |
| v. | : | No. 14AP-632 |
| Aldi, Inc., Ohio and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

### MAGISTRATE'S DECISION

#### Rendered on July 27, 2015

---

*Ronald E. Slipski* and *Charles Oldfield,* for relator.

*Weston Hurd, LLP,* and *Michael J. Spisak,* for respondent Aldi, Inc., Ohio.

*Michael DeWine,* Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 16} Relator, Flora Bennett, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the request of respondent, Aldi Inc., Ohio ("employer") for reconsideration, to reinstate the order of the staff hearing officer ("SHO"), and award permanent total disability ("PTD") compensation to her.

Findings of Fact:

{¶ 17} 1. Relator has sustained three work-related injuries during the course of her employment with the employer and her workers' compensation claims have been allowed as follows:

> 99-361327: "Sprain of right ribs."
>
> 02-860414: "Sprain of right ankle; contusion of right foot; fracture right metatarsal closed."
>
> 04-814518: "Sprain/strain right shoulder; right shoulder bursitis; right shoulder impingement syndrome; right rotator cuff tear."

{¶ 18} 2. The most significant of relator's claims is the 2004 claim which is allowed for various conditions involving relator's right shoulder. As a result of this injury, relator has undergone three separate surgical procedures and is left with significant restrictions involving her right upper extremity.

{¶ 19} 3. On September 5, 2012, relator filed her application for PTD compensation. Relator's application was supported by the July 24, 2012 independent medical examination prepared by Glen J. Novak, D.O. In his report, Dr. Novak reported the following: local tenderness along the superior aspect of the right shoulder; obvious wasting of adjacent musculature at the right deltoid; deep tendon reflexes in tact and symmetric bilaterally; no hypoesthesia. Active motion testing of the right shoulder demonstrated the following: flexion limited to 60 degrees, extension limited to 40 degrees, abduction limited to 50 degrees, adduction in tact to 50 degrees, external rotation limited to 50 degrees, and internal rotation limited to 60 degrees. Ultimately, Dr. Novak concluded that relator was not capable of performing sustained remunerative employment, stating:

> Having examined this injured worker on 7/24/12 it is within a reasonable degree of medical certainty that, in my medical opinion, this injured worker is permanently and totally impaired from any gainful employment as a result of the above conditions. Due to her marked limitations of her right shoulder and right lower extremity, in my medical opinion, and within a reasonable degree of medical certainty, she is

not capable of performing the physical demands required for an eight hour day, five day a week basis.

{¶ 20} 4. Relator was also examined by Richard N. Kepple, M.D. In his September 24, 2012 report, Dr. Kepple identified the allowed conditions in relator's claims, discussed the history of her injuries, and identified the medical records which he reviewed. As part of his physical examination, Dr. Kepple noted the following: no atrophy or asymmetry in either shoulder; tenderness over the last aspect of the right shoulder in the area of the surgical scar; mild generalized discomfort with motion of the right shoulder; crepitation with motion of both shoulders; and impingement tests mildly positive on the right and negative on the left. Range of motion indicated: flexion at 80 degrees on the right and 120 degrees on the left, extension 20 degrees on the right and 25 degrees on the left, abduction 70 degrees on the right and 130 degrees on the left, adduction 15 degrees on the right and 40 degrees on the left, internal rotation 25 degrees on the right and 40 degrees on the left, and external rotation 70 degrees on the right and 90 degrees on the left. Dr. Kepple ultimately concluded that relator would be capable of engaging in some sustained remunerative employment with permanent restrictions. Specifically, Dr. Kepple concluded:

> Ms. Bennett's permanent restrictions are related to her right shoulder injury in February 2004. She requires no restrictions for the 1999 right rib injury or the 2002 right ankle/foot injury as the allowed conditions in both of these claims have resolved and reached maximum medical improvement.

> Relative to the right shoulder, Ms. Bennett can work in a capacity in which activities with the right upper extremity are limited to the area between waist and shoulder level. She should not lift, carry, push or pull more than 5 pounds with her right upper extremity frequently or 10 pounds occasionally. Repetitive or continuous activities with the right extremity should be avoided unless the right upper extremity is supported by a table or counter top.

{¶ 21} 5. Relator was also examined by Karen Gade-Pulido, M.D. In her December 6, 2012 report, Dr. Gade-Pulido identified the allowed conditions in relator's claims, discussed the history of her injuries, and identified the medical records which she

reviewed. After noting that relator was guarded with range of motion of the right shoulder, but willing to participate in an assessment, Dr. Gade-Pulido noted the following physical findings upon examination: a lack of joint effusion, flexion 160 degrees, extension 40 degrees, abduction 160 degrees, adduction 40 degrees, external rotation 70 degrees, and internal rotation 80 degrees. Dr. Gade-Pulido indicated there was no evidence of atrophy in the right upper extremity with normal bulk and tone of the muscles, and that relator had full range of motion of her right elbow, wrist and hand, and there was no evidence of edema in the upper extremity. Thereafter, Dr. Gade-Pulido opined relator had a five percent whole person impairment with regard to her allowed conditions relative to her right shoulder and concluded that relator could perform sedentary work with the following restrictions:

> Relative to the allowed right shoulder condition, she is physically capable of a sedentary to light physical demand level of activity. She should not lift more than 10# occasionally with the right arm (bimanually) and she should perform no repetitive or overhead activities with the dominant right arm. There are no restrictions for the nondominant left arm.

{¶ 22} 6. There are two vocational reports in the stipulation of evidence. The first is the October 29, 2012 report of John Ruth, MS. Mr. Ruth identified the following barriers to competitive employment:

> [One] Age (69).
> [Two] Range of motion restrictions.
> [Three] Poor sitting/standing/walking tolerance.
> [Four] Medications causing unusual side effects interfering with safety.
> [Five] Medical contraindications to employment.
> [Six] Limited lifting capacity.
> [Seven] Poor manual dexterity capabilities.
> [Eight] Lack of transferability of past relevant work experience.
> [Nine] Lack of rehabilitation potential.

{¶ 23} Based on relator's limitations concerning her shoulder, Mr. Ruth concluded that she would not be able to perform routine sedentary work finding that her work restrictions could not be met in real world occupations. Mr. Ruth also noted that relator

had actively pursued rehabilitation efforts including three surgeries, physical therapy, use of a TENS unit, pharmacological therapy, aquatic therapy, and vocational evaluation services all to no avail.   Ultimately, Mr. Ruth concluded that relator was not employable and had no rehabilitation potential, stating:

> In summation, it is this evaluator's opinion that Ms. Flora Bennett will be unable to successfully seek or sustain remunerative employment now or in the future. Serious barriers prohibiting this woman's return to work include a chronological age of 69 placing her at the high end of the approaching advanced age category clearly not allowing her to adapt to new work situations nor to perform work in competition with others, range of motion restrictions not permitting her to perform work in an overhead, bent or crouched position interfering with her ability to perform all aspects of sedentary work, very limited sitting/standing/walking tolerance interfering with her ability to perform all aspects of sedentary work; medications causing unusual side effects interfering with this woman's safety in any work environment and potentially interfering with the safety of others working around her in an industrial environment, medical contraindications to employment, limited lifting capacity not allowing her to perform all aspects of sedentary work on a competitive basis, poor manual dexterity capabilities not allowing this woman to perform assembly work or jobs involving any significant degree of manual manipulation activities, a clear lack of transferability of past relevant work experience to a more sedentary occupation this woman could physically perform preventing her from bringing salable vocational skills to an employment interview or work site, and a clear lack of rehabilitation potential not allowing her to benefit from further rehabilitation services to the point of returning to work.

{¶ 24} The stipulation of evidence also includes the February 13, 2013 vocational report of J. Kilbane, M.Ed.   After noting that relator's job history was classified as unskilled to semi-skilled to skilled work in the light and medium capacity levels, Ms. Kilbane opined that relator had the following transferrable skills:

> Follow instructions
> Work independently
> Work with others
> Influence and direct others

> Record detailed information
> Learn new information
> Read, write, and perform basic math
> Provide customer service
> Ability to process monetary transactions
> Perform basic computer knowledge
> Comprehend basic medical terminology

{¶ 25} Ms. Kilbane opined relator was capable of returning to work as a cashier noting, however, that she would not be able to work in a large grocery store where she would be exposed to lifting, pushing, and pulling heavier objects. He concluded she could work as a cashier in a hospital cafeteria, restaurant, movie theatre, small store or parking garage, and could perform the job of a cashier one-handed if necessary. He also concluded that relator was capable of participating in vocational rehabilitation services and would benefit from such services as she tries to re-enter the labor market. Ultimately, Ms. Kilbane concluded:

> Based on the consensus of the opinions of the medical evaluators, Ms. Bennett is capable of work activity in at least sedentary work capacity level. There is repeated evidence that she is self-limiting her physical abilities, which is supported by several medical exams. Mr. Ruth administered vocational tests that lacked validity measures and that asked Ms. Bennett to perform tasks outside of her restrictions. Mr. Ruth chose not to test Ms. Bennett's abilities within her restrictions, such as administering work samples to evaluate her clerical and customer service skills.
>
> Ms. Bennett is able to work as a cashier, where she has previous experience and has direct transferable skills, in the sedentary work capacity level. She is able to participate in vocational rehabilitation. Her age is not a barrier to employment.
>
> It is my opinion that Ms. Bennett is capable of sustained remunerative employment based on the allowed conditions of the claims, her residual physical capabilities, age, education, work history and skills.

{¶ 26} 7. Relator's application was heard before an SHO on April 23, 2013. The SHO discussed the medical reports of Drs. Novak, Kepple, and Gade-Pulido specifically noting the restrictions identified by those physicians. Ultimately, the SHO relied on all

three reports to find that relator may be able to engage in sustained remunerative employment, stating:

> Therefore, based upon a review of the medical opinions of Dr. Gade-Pulido, Dr. Novak, and Dr. Kepple, the Staff Hearing Officer finds that based upon the Injured Worker's medical impairment, the Injured Worker may be able to engage in sustained remunerative employment. Thus, an analysis of Injured Worker's non-medical factors is necessary.

{¶ 27} After finding that relator may be able to engage in limited sedentary work, the SHO discussed the non-medical disability factors and the vocational reports submitted. The SHO specifically stated:

> The Injured Worker is 69 years of age and has a high school education. Per the transcript of today's hearing, the Staff Hearing Officer finds that the Injured Worker indicated that she has the ability to read, write, and do basic math. See Transcript p. six. Pursuant to the Injured Worker's IC-2 application, the Injured Worker's work history consisted of the following jobs. From 1978 through 1985, the Injured Worker worked as a meat clerk in a grocery store. From August 1986 through 1996, the Injured Worker worked as a public bus driver. From November 1996 through February 1997, the Injured Worker worked as a meat clerk for a grocery store. From 1997 through 2004, the Injured Worker worked as a cashier, substitute assistant, and assistant manager for a grocery store.
>
> The Staff Hearing Officer finds that the claimant is 69 years of age, which is considered to be a person closely approaching advanced age. In analyzing this factor, the Staff Hearing Officer finds this factor to be a negative factor in the Injured Worker's potential for re-employment because she has surpassed the average retirement age of 65 years of age.
>
> The Staff Hearing Officer finds that the Injured Worker has a high school education. The Staff Hearing Officer specifically finds that the Injured Worker completed the ninth grade of formal education and obtained her GED in 1977 per the Transcript pp. 5,6. The Injured Worker also demonstrated initiative in obtaining her GED. The Staff Hearing Officer finds that the Injured Worker's education is a positive factor in her re-employment potential because it provides her with

the necessary intellectual skills to obtain basic, entry level work.

The Staff Hearing Officer finds that the Injured Worker's work experience is a negative factor regarding the Injured Worker's potential for re-employment. The Staff Hearing Officer finds that the Injured Worker has a varied work history, working approximately seven and a half years as a meat clerk, ten years as a bus driver, and seven years at Aldi's, including work as a working manager. However, the Staff Hearing Officer finds that this work history, consisting of work ranging in strength level from light to medium and in [a] skill level from semi-skilled to skilled work, does not provide the Injured Worker with any transferrable skills into limited sedentary work as referenced by Dr. Gade-Pulido.

The Staff Hearing Officer finds that John Ruth, M.S. performed a vocational evaluation of the Injured Worker and issued the 10/29/2012 report. Mr. Ruth indicated that the Injured Worker will be unable to successfully seek or sustain remunerative employment now or in the future. Mr. Ruth indicated that serious barriers prohibiting the Injured Worker's return to work included chronological age, adaptive skills, medications, range of motion issues, limited lifting capacity, and the lack of transferability of skills. The vocational rehabilitation evaluator concluded that the Injured Worker lacked rehabilitation potential.

The Staff Hearing Officer also finds that Janet Kilbane, M.Ed. performed a vocational evaluation of the Injured Worker and issued the 02/13/2013 report. Ms. Kilbane indicated that the Injured Worker was capable of returning to work as a cashier. The vocational evaluator indicated that the Injured Worker would not be able to work as a cashier in large grocery stores where she would be exposed to lifting, pushing, and pulling heavier objects, but she could work as a cashier in a hospital cafeteria, restaurant, movie theater, small store, or parking garage. She also indicated that the Injured Worker could perform the job of a cashier one-handed if necessary. The Staff Hearing Officer does not agree with her conclusions. Specifically, the Staff Hearing Officer finds that all of the medical evidence on file indicated that the Injured Worker is unable to use her right upper extremity in a repetitive manner. The Injured Worker's former positions all involved repetitive use of the right upper extremity, and the Injured Worker's age and adaptive skills

would be barriers to rehabilitative efforts. Reviewing the Injured Worker's age, education, and work experience, the Staff Hearing Officer concurs with the opinion of Mr. Ruth and specifically finds that the Injured Worker's non-medical factors, as a whole, have a negative impact on the Injured Worker's ability to work or to be retrained.

Therefore, the Staff Hearing Officer finds that the Injured Worker is precluded from all sustained remunerative employment, and therefore is permanently and totally disabled. Permanent total disability benefits are to begin 04/23/2013, the date of this hearing. The Staff Hearing Officer finds that this start date is appropriate based upon the finding that the Injured Worker is unable to engage in sustained remunerative employment due to the foregoing analysis of the non-medical disability factors and a review of the medical evidence on file that she is capable of limited sedentary work.

{¶ 28} 8. The employer filed a motion for reconsideration arguing, in part, that the SHO order contained a clear mistake of law because the report of Dr. Novak did not constitute some evidence upon which the commission could rely because Dr. Novak applied an incorrect standard for assessing whether relator was capable of performing sustained remunerative employment. Specifically, the employer argued that Dr. Novak's opinion that relator could not work eight hours a day, five days a week, was not some evidence that relator was permanently and totally disabled inasmuch as part-time work can be considered some sustained remunerative employment.

{¶ 29} 9. In an order mailed July 31, 2013, the commission vacated the prior SHO order finding that the employer presented evidence of sufficient probative value to award adjudication of the request following a hearing.

{¶ 30} 10. A hearing was held before the commission on August 22, 2013, at that time, the commission determined that the prior SHO order did contain a clear mistake of law, stating:

08/22/2013 - After further review and discussion, it is the finding of the Industrial Commission that the Employer has met its burden of proving that the Staff Hearing Officer order, issued 05/15/2013, contains a clear mistake of law. Specifically, reliance on the 07/24/2013 report of Glen Novak, D.O., was improper, as Dr. Novak used an incorrect

> standard for assessing whether the Injured Worker is capable of sustained remunerative employment, by finding the Injured Worker could not work an eight hour a day/40 hour a week job. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and <u>State ex rel. Nicholls v. Indus. Comm.,</u> 81 Ohio St.3d 454, 692 N.E.2d 188 (1998), <u>State ex rel. Foster v. Indus. Comm.,</u> 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and <u>State ex rel. Gobich v. Indus. Comm.,</u> 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct this error.

{¶ 31} Thereafter, the commission relied on the medical reports of Drs. Kepple and Gade-Pulido who found that relator could perform at a sedentary level with certain specific permanent restrictions primarily involving her right upper extremity. The commission discussed the non-medical disability factors, reaching a different conclusion than the SHO had, and found that claimant was capable of performing some sustained remunerative employment. Specifically, the commission found that relator's age of 70 years was a negative factor, but not a bar to re-employment, that her ability to obtain her GED in 1977 was at least a neutral factor, and that her work history as a meat clerk in a grocery store, a passenger bus driver, a cashier, and an assistant manager for her employer involved some duties which she could currently perform including placing orders for the entire store, delegating cashiers, scanning registers, counting money and cashier's drawers, pick-up by Brinks, doing payroll entries, and inventory. Thereafter, the commission found that relator's lack of vocational rehabilitation was significant, specifically since she made no effort from the time of her last surgery in late 2007 to the present time. The commission also relied on the vocational rehabilitation evaluation of Ms. Kilbane who found that relator could return to work as a cashier, provided she not be required to handle heavy objects, and that she maintain transferable skills that would allow for the performance of other jobs.

{¶ 32} 11. Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law:</u>

{¶ 33} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its order exercising

its continuing jurisdiction, and the April 23, 2013 SHO order should be re-instated and PTD compensation awarded.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 36} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 37} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is

continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

{¶ 38} In the present case, the commission determined that the SHO order contained a clear mistake of law. Specifically, one of the three medical reports upon which the SHO relied was the July 24, 2012 report of Dr. Novak who, after providing his physical findings upon examination, concluded:

> Having examined this injured worker on 7/24/12 it is within a reasonable degree of medical certainty that, in my medical opinion, this injured worker is permanently and totally impaired from any gainful employment as a result of the above conditions. Due to her marked limitations of her right

shoulder and right lower extremity, in my medical opinion, and within a reasonable degree of medical certainty, she is not capable of performing the physical demands required for an eight hour day, five day a week basis.

{¶ 39} The magistrate does agree with the commission's determination that Dr. Novak used the wrong standard. Specifically, Dr. Novak concluded that relator could not perform the physical demands required for an eight-hour day, five days a week. This is not the proper standard to determine whether or not an injured worker can perform some sustained remunerative employment.

{¶ 40} Despite the fact that the magistrate agrees that Dr. Novak used an improper standard, the magistrate specifically notes that the SHO **did not** accept Dr. Novak's ultimate conclusion that relator could not perform sustained remunerative employment. The SHO relied on the physical limitations noted by the three doctors. Had the SHO relied on Dr. Novak's ultimate conclusion that relator could not return to work based on his opinion that she could not work full-time, and had the SHO not considered the non-medical disability factors, the order would have contained a clear mistake of law. However, as noted in the findings of fact, the commission relied on three medical reports from Drs. Novak, Kepple, and Gade-Pulido and, after concluding that relator may be capable of performing sedentary work with certain permanent restrictions, the SHO examined, considered, analyzed the non-medical disability factors, and concluded that:

Specifically, the Staff Hearing Officer finds that all of the medical evidence on file indicated that the Injured Worker is unable to use her right upper extremity in a repetitive manner.

{¶ 41} This was clearly based on the reports of Drs. Gade-Pulido and Kepple whose findings the SHO noted previously:

Dr. Gade-Pulido opined sedentary work with further limitations of no repetitive or overhead use of the right upper extremity.

* * *

Repetitive or continuous activities with the right extremity should be avoided unless the right upper extremity is supported by a table or counter top.

{¶ 42} In the magistrate's opinion, the only portion of Dr. Novak's report upon which the SHO relied was his opinion that relator could not work eight hours a day, five days a week. Drs. Kepple and Gade-Pulido provided specific restrictions related to relator's right upper extremity, which the SHO found limited her abilities significantly enough that, after consideration was given to the non-medical disability factors, she was unable to perform any sustained remunerative employment. Upon rehearing, the commission relied on the same medical evidence upon which the SHO relied, but reached a different ultimate conclusion after discussing the non-medical disability factors. Given that the SHO did not rely on Dr. Novak's conclusion that relator could not work (which was based on an inappropriate standard), the SHO's obvious reliance on the reports of Drs. Kepple and Gade-Pulido, and the significant restrictions they provided for relator's right upper extremity, the magistrate finds that the commission abused its discretion when it determined that the prior SHO order contained a clear mistake of law, and abused its discretion when it exercised its continuing jurisdiction.

{¶ 43} Based on the foregoing, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its August 22, 2013 order exercising its continuing jurisdiction, ultimately denying relator PTD compensation, and reinstate the April 23, 2013 SHO order which awarded relator PTD compensation.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).