[This decision has been published in *Ohio Official Reports* 93 Ohio St.3d 151.]

THE STATE EX REL. DRONE, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Drone v. Indus. Comm*., 2001-Ohio-1295.]

*Workers' compensation—Average weekly wage incorrectly calculated resulting in underpayment of claim—After discovery of error Bureau of Workers' Compensation limited recoupment to the two-year period prior to the date the error was discovered—Court of appeals' order that Industrial Commission readjust all compensation previously paid affirmed—R.C. 4123.52 and State ex rel. Gen. Refractories Co. v. Indus. Comm., applied.*

(No. 00-911—Submitted June 20, 2001—Decided September 5, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-648.

————————————

*Per Curiam.*

{¶ 1} The average weekly wage ("AWW") of appellee-claimant, Evelyn Drone, was set by appellant, Bureau of Workers' Compensation ("BWC"), at $138.96. On September 1, 1998, the BWC discovered an error in its calculation. On December 18, 1998, it notified claimant that:

"The average weekly wage was incorrectly calculated resulting in an underpayment in your claim. Your corrected average weekly wage is $174.08. BWC will issue a payment to you for the underpayment. However, adjustments will be limited to compensation paid for the two-year period prior to September 1, 1998, the date the error was discovered."

{¶ 2} On December 31, 1998, claimant formally objected to the bureau's order. A district hearing officer ("DHO") then reset the AWW at $206.60, and ordered an adjustment to all compensation previously paid. The DHO found that no application for readjustment had been filed in the claim, rendering inapplicable

R.C. 4123.52's two-year statute of limitations that presumably motivated the bureau's repayment restriction.

{¶ 3} The BWC appealed. A staff hearing officer, in turn, vacated the DHO's order and permitted recoupment only to December 31, 1996, the date two years prior to claimant's objection to the bureau's order.

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the Industrial Commission/BWC abused their discretion in refusing to readjust all prior compensation. The magistrate recommended that the commission pay compensation retroactive to September 1, 1996, *i.e.*, two years prior to the discovery of the error. The court of appeals ordered the commission to adjust all compensation previously paid.

{¶ 5} This cause is now before this court upon an appeal as of right.

{¶ 6} The parties agree that claimant merits some measure of recovery for the amount of compensation that she was underpaid. They only disagree on the amount, based on the length of the recoupment.

{¶ 7} The controversy arises from varying interpretations of R.C. 4123.52. It is, at times, a very confusing statute that intermixes a general grant of continuing jurisdiction with several statutes of limitations. The relevant portion reads:

"[T]he commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor."

{¶ 8} This short passage is replete with perils. Consecutive reference to "modification," "change," "finding," and "award" suggests substantive distinctions between the terms. Reference to "application," without more, has also produced problems. See *State ex rel. Gen. Refractories Co. v. Indus. Comm.* (1989), 44 Ohio St.3d 82, 541 N.E.2d 52. Finally, the prohibition against retroactively "awarding" compensation in excess of two years is also a potential source of trouble. Taken

together, they render particularly perplexing matters of underpayment or overpayment.

{¶ 9} The BWC argues that the statute of limitations began to run on September 1, 1998—the day the bureau discovered the error. The staff hearing officer pegged it to December 31, 1998—the date of claimant's written objection. The DHO and the court of appeals concluded that the statute of limitations was never triggered because no application had been filed. We agree that the statute of limitations was never triggered.

{¶ 10} The statute of limitations indeed begins running as of the date of the application for relief, and any discussion of that term starts with *Gen. Refractories*. At issue was the date to which—based on the two-year statute of limitations in R.C. 4123.52—temporary total disability compensation ("TTD") could be backdated. A March 23, 1982 doctor's report diagnosed right femoral necrosis as the cause of claimant's inability to work. Because that condition had not been allowed, the self-insured employer informed claimant that no consideration could be given to the condition, including the payment of any related compensation. Claimant responded on June 23, 1983, with a motion for additional allowance.

{¶ 11} A DHO allowed the condition. On May 15, 1985, claimant moved for TTD related thereto. A second DHO granted the motion and, after construing claimant's 1983 additional allowance motion as an "application for compensation," awarded TTD from March 16, 1982.

{¶ 12} The employer appealed, arguing that claimant's 1985 formal TTD motion was the point from which to measure claimant's right to retroactive compensation. We disagreed. We initially observed that R.C. 4123.52 did not specify how an application was to be made. Consequently, the failure of the additional-allowance motion to contain a compensation demand was not dispositive.

**{¶ 13}** We cited four factors in determining whether an application existed: (1) the document's contents, (2) the nature of relief sought, (3) how the parties treated the document, and (4) the liberal construction mandate of R.C. 4123.95. Applying those factors, we emphasized three things: (1) the employer knew that claimant had been off work since March 16, 1982, for medical reasons, (2) the employer itself made reference to compensation in its response to the initial doctor's report, and (3) claimant's additional allowance motion was generated by the employer's response to the doctor's report. Therefore:

"Put in perspective, if appellant had considered necrosis as an allowed condition, the result would have been the payment of compensation for the condition and the June 23, 1983 motion would not have been necessary. Thus it appears obvious, as the commission and the court of appeals found, that the parties treated the application for allowance of the additional condition as an application for an additional award of compensation." *State ex rel. Gen. Refractories*, 44 Ohio St.3d at 84, 541 N.E.2d at 55.

**{¶ 14}** The most immediate dilemma is one of identification. In *Gen. Refractories,* there were two clear requests for action, that is, two potential applications—the additional-allowance motion and the TTD motion. Resolution merely required choosing between them.

**{¶ 15}** Here, there is no motion. There is simply a bureau order and claimant's written objection to it. The former comports least with the criteria set forth by *Gen. Refractories*. That case instructs the reviewer to examine the "nature of the relief *sought*." (Emphasis added.) *Id.* at 83, 541 N.E.2d at 54. This implies a request. The bureau order is not requesting relief. It is exactly what its name indicates—an order. It states what is to be done and how it is to be accomplished.

**{¶ 16}** We are uncomfortable with this reasoning because we recognize that when the bureau exercises *sua sponte* its continuing jurisdiction to correct a mistake, an order such as this is usually all that issues. The BWC does not apply

for permission to act. Thus, if the bureau order lacks value for purposes of the two-year statute of limitations, does that mean that the bureau is not bound by the statute of limitation? Going a step further, one wonders whether the BWC even has continuing jurisdiction to order any recoupment if, as the court of appeals held, R.C. 4123.52 does not apply at all. These are questions that have no ready answers.

{¶ 17} Claimant's written objection more closely conforms to some of the elements set forth in *Gen. Refractories* because it indeed seeks relief. Unlike that case, however, claimant's submission was not initiating, it was responsive. Therefore, construing this objection as an application effectively penalizes claimant for actively participating in her case. Claimant's acquiescence would have kept the BWC's September 1, 1996 recoupment date intact. If her objection constitutes an application, recoupment is limited to December 31, 1996, costing claimant four months of underpaid benefits. This conflicts with the liberal-construction mandate of *Gen. Refractories*.

{¶ 18} The third proposed date is September 1, 1998. It is the date on which the BWC realized its mistake. While generous, it, too—for various reasons—does not satisfy *Gen. Refractories*. As demonstrated by its third criterion—treatment of the application by the parties—inherent in that evaluation is knowledge by the parties of a dispute. A party cannot respond to something that it does not know exists. The BWC discovered the miscalculation on September 1, 1998. Claimant did not know that a miscalculation had occurred, however, until she received the bureau's December 18, 1998 order—the shortcomings of which have already been discussed.

{¶ 19} Analysis has thus come full circle and herein lies the dilemma, as no answer distinguishes itself. We find that the court of appeals' judgment is truest to R.C. 4123.52 and *Gen. Refractories*. Because the statute of limitations in R.C. 4123.52 requires an application to trigger it and nothing satisfies *Gen. Refractories'* outline of an application, then the statute of limitations has not been invoked.

**{¶ 20}** The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs in judgment.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 21}** I dissent from the majority opinion and would calculate payment from September 1, 1988, the date the BWC discovered the error.

**{¶ 22}** I believe that the clear intent of R.C. 4123.52 is to apply to *all* adjustments to changes in awards. R.C. 4123.52 refers to "*any* modification, change, finding, or award." (Emphasis added.) The majority finds the phrase "filing application" removes from the statute all BWC-discovered mistakes.

**{¶ 23}** This penalizes the diligent claimant and rewards the claimant who fails to discover a mistake. The claimant who discovers a mistake and files an application to correct such a mistake is only entitled to back pay two years from the application. If the claimant sits on his or her rights or doesn't challenge the finding, and the BWC discovers the mistake, the majority awards that claimant compensation back to the *beginning*.

**{¶ 24}** I believe that the intent of the legislature in putting in the limitation was to require due diligence on a claimant's part to verify and challenge awards while limiting the fund's liability for errors occurring long ago. Today's decision erodes that responsibility and, in fact, actually rewards the irresponsible.

**{¶ 25}** Therefore, I respectfully dissent and would reverse the judgment of the court of appeals.

_____

*Shapiro, Kendis & Associates Co., L.P.A.,* and *Rachel B. Jaffy*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellant.

_____