[Cite as *State ex rel. David v. Indus. Comm.*, 2024-Ohio-2790.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Stanley F. David, | : | |
| Relator, | : | No. 22AP-380 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on July 23, 2024.

**On brief:** *Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III,* and *Jeffrey A. Karson; Flowers & Grube, Louis E. Grube, Paul W. Flowers,* and *Melissa A. Ghrist,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

**On brief:** *Roetzel & Andress, L.P.A., Douglas E. Spiker, Timothy J. Webster,* and *Danielle C. Young,* for respondent Zenith Systems LLC.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Stanley F. David, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying temporary total disability ("TTD") compensation and to issue an order granting TTD compensation from December 5, 2018 and continuing forward.

{¶ 2} This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto. The magistrate determined that the Staff Hearing Officer

("SHO") erred in denying relator's application for TTD compensation on the premise that relator was ineligible because he was unable to demonstrate evidence of wages during the requested period of disability or evidence of wages for replacement, and thus the commission abused its discretion in denying relator's request for TTD compensation. The magistrate has recommended that this court grant relator's request, in part, by ordering a limited writ of mandamus so that the commission may properly inquire as to the reason for a claimant's inability to work during the requested period of disability and make a determination regarding whether the inability to work is the direct result of an impairment arising from an injury or occupational disease or the direct result of reasons unrelated to the injury or occupational disease as required by R.C. 4123.56.

{¶ 3} The commission has filed the following three objections to the magistrate's decision:

> [1.] The commission's order was supported by evidence and the magistrate failed to acknowledge the commission as the exclusive evaluator of the weight and credibility of the evidence.
>
> [2.] Evidence supported the commission's determination that David was not working as the direct result of reasons unrelated to the allowed injury.
>
> [3.] Evidence supported the commission's determination that David was not entitled to TTD compensation because David was not "otherwise qualified" to receive TTD compensation.

{¶ 4} Respondent, Zenith Systems LLC ("Zenith"), has filed the following as its sole objection to the magistrate's decision:

> The commission's order denying David's request for TTD compensation pursuant to R.C. 4123.56(F) was supported by some evidence and did not constitute any abuse of discretion to warrant the magistrate's order to remand the issue of David's entitlement to TTD compensation back to the commission.

{¶ 5} Because both the commission and Zenith have filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Neither party has objected to the factual findings of the magistrate

and upon our review we find no error pertaining to same. We thus turn to whether the magistrate has appropriately applied the law in this matter.

{¶ 6} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record." *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 362, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). The court will not disturb the commission's decision if there is "some evidence" to support it. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 10th Dist. No. 14AP-632, 2016-Ohio-83, ¶ 6. " 'Where a commission order is adequately explained and based on some evidence, * * * the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997). Thus, as long as some evidence supports the commission's decision, this court must defer to the commission.

{¶ 7} In making its determination, the resolution of disputed facts is within the final jurisdiction of the commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982). Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 8} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement ("MMI"). R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 9}   R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 10}   In *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, in considering R.C. 4123.56(F) as modified, this court held that "not working—alone—is not dispositive [of whether a claimant is eligible for TTD compensation], but rather requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease." *Autozone* at ¶ 33. "So long as that causal link is established, and he or she is otherwise qualified, the claimant is eligible for TTD compensation." *Id.* "R.C. 4123.56(F) requires us to review only whether the claimant * * * was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified." *Id.* at ¶ 34. Thus, our decision in *Autozone* makes clear that the simple fact that an injured worker was not working prior to the claimed period of TTD does not automatically disqualify a claimant from receiving TTD compensation. *Autozone* at ¶ 30. Similarly, in *Autozone*, this court rejected the concept that an injured worker is not entitled to TTD compensation unless he is employed at the time of the claimed period of TTD and actually suffered lost wages. *Id.* at ¶ 32-33.

{¶ 11}   Under R.C. 4123.56(F), there are two operative questions in determining eligibility for TTD compensation: "(1) whether [the claimant] is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether [the claimant] is otherwise qualified to receive TTD compensation." *Autozone* at ¶ 35. In *Autozone*, we held that the phrase "otherwise qualified" in the first sentence of R.C.

4123.56(F) referred back to the disqualifications set forth in R.C. 4123.56(A), including the claimant having reached MMI. *Id.* at ¶ 29. We further noted that even if a claimant was unable to work as the direct result of an impairment arising from an injury, the claimant was not otherwise qualified to receive TTD compensation if he had reached MMI. *Id.*, citing *State ex rel. R.R. Donnelley & Sons Co. v. Indus. Comm.*, 10th Dist. No. 21AP-119, 2022-Ohio-4774, ¶ 42.

{¶ 12} In *Autozone*, we also addressed the phrase "direct result," as used in both the first and second sentences in R.C. 4123.56(F), as follows:

> Reading the ordinary meaning of "direct" within the context of the statute as a whole, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease. We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. [*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13]. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

*Autozone* at ¶ 22. In other words, although there may very well be *other* reasons why an employee is not working, as long as he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease, that is sufficient for TTD compensation eligibility.

{¶ 13} With the foregoing law governing a claimant's eligibility for TTD in mind, we now turn to the objections of the commission. In its first objection, the commission asserts its order was supported by evidence and the magistrate failed to acknowledge the commission as the exclusive evaluator of the weight and credibility of the evidence. In this

objection, the commission argues that although the denial of TTD may have been based on an improper standard and considerations, there was other evidence that *could have been* relied upon by the SHO to deny TTD. Specifically, the commission points to the SHO's finding that the treatment notes of John Wilbur, M.D. ("Dr. Wilbur") from January 23, 2018 through July 23, 2021 are inconsistent with the subsequent MEDCO-14 dated July 29, 2021 because the treatment notes do not speak to David's work status. The commission asserts the alleged inconsistency between Dr. Wilbur's notes and the later-filed MEDCO-14 is "some evidence" supporting the ultimate denial of David's request for TTD benefits; therefore, asserts the commission, its order should not be disturbed. We do not agree.

{¶ 14} First, the SHO's clear legal error of its misapplication of the *Autozone* decision and in ignoring R.C. 4123.56(F), which was enacted in 2020 specifically to "supersede judicial decisions applying the voluntary abandonment doctrine" (*Autozone* at ¶ 14), taints the SHO's entire ruling. Such a clear legal error can only be rectified by remanding the matter to the commission for the proper analysis.

{¶ 15} Furthermore, Dr. Wilbur's mere silence on the factual issue of ability to work/extent of disability as a result of the later-allowed condition of post-traumatic arthritis in the left hip is not inconsistent with his subsequent opinion on that factual issue as evinced in the MEDCO-14 submitted on July 29, 2021. Moreover, even if there were any inconsistencies between Dr. Wilbur's treatment notes between January 23, 2018 and July 23, 2021 and the MEDCO-14 submitted on July 29, 2021, such inconsistencies would not be a valid basis for the denial of TTD benefits premised on the additional allowance of post-traumatic arthritis in the left hip. This is so because a finding of lack of work ability prior to the additional allowance of a condition is not a requirement under the statute governing the payment of TTD benefits. *See* R.C. 4123.56.

{¶ 16} Accordingly, we overrule the commission's first objection.

{¶ 17} In its second objection, the commission contends evidence supported the commission's determination that David was not working as the direct result of reasons unrelated to the allowed injury. In this objection, the commission insists that the SHO did not base her decision denying TTD benefits solely upon David's lack of wages, but that other facts in the record cited to by the SHO support a finding that David was not working for reasons unrelated to the injury. We reject this argument because it wholly

misconstrues and misstates the requirements of R.C. 4123.56(F), as this court fully discussed in *Autozone*.

{¶ 18} As the magistrate explained, in *Autozone*, this court explicitly "decline[d] to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work *only* due to an impairment arising from an injury or occupational disease." (Emphasis sic.) *Autozone* at ¶ 22. In other words, regardless of other reasons why David had not been working prior to the additional allowance of the physical condition of post-traumatic arthritis in the left hip, he is entitled to TTD compensation if this newly allowed condition also prevented him from working. *See Autozone* at ¶ 33.

{¶ 19} In short, as we found in *Autozone*, R.C. 4123.56(F) limits the inquiry to whether David's "inability to work" resulted "immediately from an impairment arising from an injury or occupational disease." *Autozone* at ¶ 22. He was not required to "eliminate *other* reasons" he "had been out of work previously." *Id*. at ¶ 19. (Emphasis added.) Thus, the SHO's order misapplied the law to the facts in the record in this case, and a clear mistake of law was committed which must be rectified via mandamus.

{¶ 20} Accordingly, we overrule the commission's second objection.

{¶ 21} Lastly, in its third objection, the commission asserts evidence supported the commission's determination that David was not entitled to TTD compensation because David was not "otherwise qualified" to receive TTD compensation. In this objection, the commission asserts that because David had previously been found to have reached MMI, and thereafter David had not been certified as eligible for TTD compensation between 2014 and 2021, he was not "otherwise qualified" to receive TTD compensation. This objection is readily dispensed with.

{¶ 22} In this case, the allowed conditions for which David had been found to be at MMI were his sole psychological condition and the previously allowed physical conditions of fracture of the left pelvis and left femur, for which the physical conditions had never been the basis for the denial of termination of any benefits in any event. But David is now seeking TTD compensation not based upon those previously allowed conditions, but rather upon the newly allowed condition of post-traumatic arthritis in the left hip. TTD compensation may be paid on account of a new disabling condition notwithstanding a prior determination of MMI as to one or more other conditions. *See State ex rel. Airborne*

*Freight Corp. v. Indus. Comm.*, 117 Ohio St.3d 369, 2008-Ohio-1116, ¶ 9-16; *State ex rel. Stouffer Corp. v. Indus. Comm.*, 10th Dist. No. 01AP-1425, 2002-Ohio-4297, citing *State ex rel. Basye v. Indus. Comm.*, 64 Ohio St.3d 68 (1992); *State ex rel. Richardson v. Quarto Mining Co.*, 73 Ohio St.3d 358, 652 (1995). Further, new or changed circumstances are not relevant to the inquiry when TTD benefits are being sought for a condition that has not reached MMI. *Airborne Freight* at ¶ 16.

{¶ 23} Accordingly, we overrule the commission's third objection.

{¶ 24} We now turn to Zenith's sole objection, in which it contends the commission's order denying David's request for TTD compensation, pursuant to R.C. 4123.56(F), was supported by some evidence and did not constitute any abuse of discretion to warrant the magistrate's order to remand the issue of David's entitlement to TTD compensation back to the commission. We reject this contention for the same reasons that we rejected the commission's first and second objections, which we discussed above and will not restate here.

{¶ 25} Additionally, Zenith's objection further lacks merit because its argument that David "was 'not otherwise qualified' to receive" TTD benefits as a matter of law under R.C. 4123.56(F) because he "was not working and had suffered a wage loss as the direct result of reasons unrelated to the original injury" misconstrues and misstates the standard for finding a claimant "not otherwise qualified" under the statute, as explained by this court in *Autozone*. (Feb. 7, 2024 Objs. to Mag.'s Decision of Respondent Zenith Systems LLC at 9.) More specifically, we found that, reading the code section "as a whole, the phrase 'otherwise qualified' in the first sentence of R.C. 4123.56(F) as it relates to TTD compensation plainly refers back to the disqualifications set forth in section (A), i.e., returning to work, a statement from the treating physician states the employee is capable of return to work, the employer or another employer makes work available within the physical capabilities of the employee, or the employee has reached [MMI]." *Autozone* at ¶ 29. In short, in *Autozone*, we explicitly rejected the argument Zenith makes in its objection.

{¶ 26} Accordingly, we overrule Zenith's sole objection to the magistrate's decision.

{¶ 27} Based on the foregoing, we overrule all of the filed objections. Having conducted an examination of the magistrate's decision and an independent review of the

evidence, pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is entitled to a limited writ of mandamus so the commission may properly apply R.C. 4123.56(F) and determine whether relator is entitled to TTD compensation for the period requested. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we grant relator's request to the extent that we find a limited writ of mandamus is warranted, as consistent with the within decision.

*Objections overruled*;
*limited writ of mandamus granted*;
*matter remanded for further proceedings.*

MENTEL, P.J., and LELAND, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Stanley F. David,                    :

        Relator,                                        :

v.                                                                                    No.  22AP-380

                                                        :

Industrial Commission of Ohio et al.,     :                    (REGULAR CALENDAR)

        Respondents.                               :

                                                        :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 10, 2024

*Plevin & Gallucci Co.*, *L.P.A., Frank L. Gallucci, III,* and *Jeffrey A. Karson*; *Flowers & Grube, Louis E. Grube, Paul W. Flowers,* and *Melissa A. Ghrist*, for relator.

*Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

*Roetzel & Andress, L.P.A., Douglas E. Spiker, Timothy J. Webster,* and *Danielle C. Young*, for respondent Zenith Systems LLC.

IN MANDAMUS

{¶ 28} Relator Stanley F. David seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying temporary total disability ("TTD") compensation and to issue an order granting TTD compensation from December 5, 2018 and onward.

**I. Findings of Fact**

{¶ 29} 1. Relator sustained an injury in the course of and arising out of his employment with respondent Zenith Systems LLC ("Zenith") on November 16, 2010 when

he fell from a truck. On December 13, 2010, a Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death ("FROI" or "FROI-1") form was filed. Relator's injury or part of the body affected was described in the FROI as follows: "Left hip/thigh/buttock." (Stip. at 1.)

{¶ 30} 2. Relator's claim was initially allowed for the conditions of fracture of pelvis and fracture of femur. By a February 10, 2012 order of a commission district hearing officer ("DHO"), relator's claim was amended to allow the condition of substantial aggravation of pre-existing major depressive disorder. A commission staff hearing officer ("SHO") affirmed the DHO's order on March 20, 2012.

{¶ 31} 3. Relator's treating physician, John H. Wilber, M.D., completed a series of MEDCO-14 physician's report of work ability ("MEDCO-14") forms. In a MEDCO-14 dated January 7, 2013, Dr. Wilber indicated relator was temporarily not released to any work, including his former position of employment, from November 16, 2010 to February 16, 2013. In a MEDCO-14 dated February 11, 2013, Dr. Wilber indicated relator was not released to the former position of employment but would be able to return to available and appropriate work with restrictions from November 16, 2010 to May 16, 2013. In a MEDCO-14 dated June 17, 2013, Dr. Wilber indicated relator was temporarily not released to work, including the former position of employment, from November 16, 2010 to December 4, 2013. In a MEDCO-14 dated December 5, 2013, Dr. Wilber indicated relator was not released to any work, including the former position of employment, from December 4, 2013 to June 3, 2014. Following the December 5, 2013 MEDCO-14, no MEDCO-14 forms appear in the record until a MEDCO-14 dated July 29, 2021.

{¶ 32} 4. Relator was examined by Kiva Shtull, M.D., on March 3, 2014 with regard to the physical conditions of his claim. Dr. Shtull found relator was not able to return to his previous position of employment and job duties without restrictions. Dr. Shtull found relator's allowed physical conditions had reached maximum medical improvement ("MMI"), stating that relator "fulfills the definition of a treatment plateau beyond which no functional or physiologic improvement can reasonably be expected despite any further therapeutic interventions." (Stip. at 21.)

{¶ 33} 5. Relator was next examined on March 7, 2014 by Paul A. Deardorff, Ph.D., with regard to his allowed psychological condition of substantial aggravation of pre-existing

major depressive disorder. Dr. Deardorff found that relator was not prevented from returning to his former position of employment without restrictions based on the allowed psychological condition. Dr. Deardorff further found relator had reached MMI with regard to the allowed psychological condition.

{¶ 34} 6. In a letter dated April 9, 2014, Michael Faust, Ph.D., found relator had reached MMI with regard to the allowed psychological condition.

{¶ 35} 7. In an April 24, 2014 order, a commission DHO ordered relator's TTD compensation to be terminated effective April 9, 2014 based on the report of Dr. Faust. The April 24, 2014 DHO order was affirmed by a commission SHO in a May 31, 2014 order.

{¶ 36} 8. As documented in a series of notes, relator was seen for follow-up appointments with Dr. Wilber's office on the following dates: June 3, 2014, January 13, 2015, April 14, 2015, January 29, 2016, July 29, 2016, July 25, 2017, January 23, 2018, July 24, 2018, January 22, 2019, July 23, 2019, January 28, 2020, July 28, 2020, August 11, 2020, October 13, 2020, April 13, 2021, July 23, 2021, December 7, 2021, and February 22, 2022.

{¶ 37} 9. In a C-9 request for medical service reimbursement or recommendation for additional conditions for industrial injury or occupational disease ("C-9") form signed by Dr. Wilber on December 5, 2018, Dr. Wilber recommended the additional condition of traumatic arthritis left hip.

{¶ 38} 10. On December 11, 2018, relator filed a C-86 motion requesting the condition of "Post Traumatic Arthritis Left Hip" be allowed based on the diagnosis of Dr. Wilber.

{¶ 39} 11. Following a hearing on March 21, 2019, a commission DHO denied relator's motion for allowance of the condition of post traumatic left hip arthritis in a January 16, 2019 order. Following a hearing on April 30, 2019, a commission SHO affirmed the DHO order in an order dated May 7, 2019. The commission refused relator's appeal from the SHO order on May 29, 2019.

{¶ 40} 12. Relator filed a notice of appeal from the May 29, 2019 commission order with the Cuyahoga County Court of Common Pleas on June 12, 2019. Pursuant to a jury verdict, it was determined that relator was entitled to participate in the Workers'

Compensation Fund for the requested condition of "post-traumatic arthritis left hip" as a result of relator's November 16, 2010 injury. (Stip. at 104.)

{¶ 41} 13. On September 7, 2021, relator filed a C-86 motion requesting TTD compensation beginning December 5, 2018 and continuing. The motion was accompanied by a C-84 request for temporary total compensation signed by relator on July 25, 2021. In the C-84 request, relator indicated he was not working in any capacity, had not worked during the requested period of disability, and did not have a job to which he could return. The last date relator had worked anywhere was November 16, 2010, the date of the work-related injury. Describing what he felt was preventing him from returning to work at the time, relator stated, "Pain, Limited mobility, age." (Stip. at 110.) In response to the question of whether he would consider participating in vocational rehabilitation if appropriate, relator indicated, "No," and provided the following explanation: "I'm 70 yrs. [sic] old now." (Stip. at 110.) Relator indicated he was receiving social security retirement benefits. The C-86 motion and C-84 request were accompanied by a MEDCO-14, which was signed by Dr. Wilber on July 29, 2021. Dr. Wilber indicated in the MEDCO-14 that relator was unable to do the job held on the date of injury from December 5, 2018 to October 25, 2021.[1]

{¶ 42} 14. Following a hearing, a commission DHO issued an order granting relator's request for TTD compensation on November 23, 2021. The DHO noted the condition of post-traumatic arthritis left hip was allowed by the July 7, 2021 jury verdict in the common pleas court case. Zenith filed an appeal from the November 23, 2021 DHO order.

{¶ 43} 15. In a MEDCO-14 dated December 13, 2021, Dr. Wilber indicated that relator could not return to the full duties of his job held on the date of the injury for a period beginning December 5, 2018 until March 1, 2022.

{¶ 44} 16. On appeal from the November 23, 2021 DHO order, a commission SHO conducted a hearing on January 3, 2022. In a January 6, 2022 order, the SHO vacated the DHO's order and denied relator's request for TTD compensation. First, the SHO found the requested TTD compensation from December 5, 2018 through September 6, 2019 was

---

[1] The parties' stipulation of evidence reflects that the MEDCO-14 was not filed until September 7, 2021, the date of relator's C-86 motion for TTD compensation and C-84 request for TTD compensation.

time-barred as filed beyond the two-year statute of limitations provided by R.C. 4123.52. With regard to the requirements of R.C. 4123.52, the SHO further stated:

> The Staff Hearing Officer finds that an application for compensation is governed by the provisions of 4123.52. The Staff Hearing Officer further finds that [relator's] counsel's citation of Memo I2 of the Adjudications Before the Industrial Commission pertaining to the two year notice requirement under R.C. 4123.84 not applying to residual or flow-through conditions is not synonymous with or does not extend the time limitations to applications for compensation.

(Stip. at 117.)

{¶ 45} The SHO additionally denied TTD compensation for the period of December 5, 2018 through the present "as [relator] has no wages for replacement and is therefore, not eligible for the requested compensation pursuant to R.C. 4123.56(F)." (Stip. at 117.) With regard to this finding, the SHO stated:

> The Staff Hearing Office finds that [relator] previously retired after 30 years of employment with the Illuminating Company prior to the date of injury in this claim and subsequently worked for a two month period prior sustaining the injury herein. The [relator] was certified for temporary total disability for the allowed physical conditions initially in this claim from 11/16/2010 through 12/04/2013. The Staff Hearing Officer finds no further MEDCO-14 Physician's Reports of Work Ability or C-84 Requests for Compensation related to the allowed physical conditions filed in this claim until the C-84 at issue filed 09/07/2021 and 07/29/2021 MEDCO-14.
>
> The Staff Hearing Officer further finds that [relator] received temporary total disability compensation for the allowed psychological condition until 04/09/2014 when [relator] was found to have reached maximum medical improvement for the allowed psychological condition. The medical evidence relied upon in the determination of [relator] having reached maximum medical improvement for the allowed psychological condition was the 04/09/2014 questionnaire completed by the treating provider, Michael Faust, Ph.D., and a report by Paul Deardorf, Ph.D., dated 03/07/2014. The report of Dr. Deardorf further opined that [relator] could return to his former position of employment and that the allowed substantial aggravation of pre-existing major depressive disorder was not work prohibitive.

(Stip. at 117-18.)

{¶ 46} The SHO found relator had not worked since November 16, 2010 and that "there is insufficient evidence of disability related to the allowed conditions in this claim" from April 9, 2014 until relator's filing of the C-84 request for TTD compensation on September 7, 2021. (Stip. at 118.) Furthermore, the SHO found relator had been receiving social security retirement since October 2011 and "testified at the present hearing that he has not made any attempt to return to work since his temporary total disability was terminated in 2014." (Stip. at 118.) The SHO "acknowledge[d] the additional allowance in this claim for post-traumatic arthritis of the left hip by trial court judgment" on July 7, 2021, but nevertheless found "the additional allowance alone, absent evidence of wages during the requested period of disability, does not qualify [relator] for the requested temporary total disability." (Stip. at 118.) Additionally, the SHO found review of Dr. Wilber's treatment notes from January 23, 2018 through July 23, 2021 "are inconsistent with the MEDCO-14 dated 07/29/2021, as the treatment records beginning 01/23/2018 do not mention and/or remain silent as [to relator's] work status." (Stip. at 118.) In accordance with these findings, the SHO denied TTD compensation for the requested period. (Stip. at 118.)

{¶ 47} 17. Relator appealed the January 6, 2022 SHO order. On January 27, 2022, the commission issued an order refusing relator's appeal.

{¶ 48} 18. Relator filed a motion for reconsideration of the January 27, 2022 order of the commission. On May 12, 2022, the commission issued an order denying relator's request for reconsideration.

{¶ 49} 19. Relator filed his complaint in this mandamus action on July 1, 2022.

## II. Discussion and Conclusions of Law

{¶ 50} Relator seeks a writ of mandamus ordering the commission to grant relator TTD compensation.

## A. Requirements for Mandamus

{¶ 51} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v.*

*Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 52} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*.

## B. Temporary Total Disability Compensation

{¶ 53} R.C. 4123.56, which governs TTD compensation, sets forth the circumstances under which a claimant is entitled to receive TTD compensation:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). *See State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633.[2] The statute also contains other restrictions on qualifying for or continuing to receive an award of TTD compensation:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of

---

[2] Until the enactment of 2020 Am.Sub.H.B. No. 81 ("H.B. 81"), voluntary abandonment of employment was an affirmative defense to a claim for TTD compensation. *See State ex rel. Quest Diagnostics, Inc. v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2023-Ohio-2213, ¶ 16. Effective September 15, 2020, H.B. 81 amended R.C. 4123.56 by adding division (F). Claims pending on or arising after the effective date are subject to the provisions of R.C. 4123.56(F). *Autozone* at ¶ 8, fn. 1; *Pratt*, 2022-Ohio-4111, at ¶ 10, fn. 2; H.B. 81, Section 3. Because relator's application for TTD compensation was filed on September 7, 2021, after the effective date of H.B. 81, the provisions of R.C. 4123.56(F) apply.

> employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A).

## C. Application

{¶ 54} Relator asserts the commission erred by denying his request for TTD compensation for two reasons.[3]

*1. Whether Statute of Limitations in R.C. 4123.52(A) Applied*

{¶ 55} First, relator argues the SHO incorrectly applied a statute of limitations to deny relator's request. The SHO found relator's request for TTD compensation from December 5, 2018 through September 6, 2019 was time-barred because the application was filed beyond the two-year statute of limitations provided by R.C. 4123.52.

{¶ 56} The continuing jurisdiction of the commission is governed by R.C. 4123.52. Pursuant to this statute, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). In one such temporal limitation, the statute provides that "[t]he commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor." R.C. 4123.52(A). *See State ex rel. Spotleson v. Medlab Ohio Inc.*, 10th Dist. No. 21AP-362, 2023-Ohio-2464, ¶ 7. Furthermore, R.C. 4123.52(D) provides that "[t]his section does not affect the right of a claimant to compensation accruing subsequent to the filing of any such application, provided the application is filed within the time limit

---

[3] Relator also argues in his brief that he exhausted all administrative remedies despite the commission's defense in its answer that he failed to do so. Neither the commission nor Zenith contend in their briefs that relator failed to exhaust the available administrative remedies. Here, the SHO's order denied relator's request for TTD compensation. Relator's appeal of that order was refused. Moreover, relator sought and was denied reconsideration of the order refusing his appeal. Relator did not fail to exhaust the available administrative remedies. *State ex rel. Novak v. Indus. Comm.*, 10th Dist. No. 92AP-1326, 1993 Ohio App. LEXIS 5411 (Nov. 12, 1993); *State ex rel. Dillon v. Indus. Comm.*, 10th Dist. No. 20AP-600, 2022-Ohio-4773, ¶ 10; *State ex rel. Lapp Roofing & Sheet Metal Co. v. Indus. Comm.*, 10th Dist. No. 05AP-950, 2007-Ohio-933, ¶ 11-12 (stating that the relator "did not have to seek reconsideration of the adverse decision before seeking relief in mandamus * * * [n]or was relator required to seek relief under R.C. 4123.52 (commission's continuing jurisdiction) before seeking relief in mandamus").

provided in this section." The term "application" in R.C. 4123.52(A) is not statutorily defined. *State ex rel. Cobble v. Indus. Comm. of Ohio*, 92 Ohio St.3d 22, 25 (2001).

{¶ 57} " 'The purposes of * * * [the] statutory limitation on the prosecution of compensation claims are that such claims be prosecuted promptly * * * while the facts are available; and that the ultimate liability under such claims be established promptly so that it may be enforced by the * * * [Industrial Commission] for the benefit of the fund.' " (Brackets sic.) *State ex rel. Gen. Refractories Co. v. Indus. Comm. of Ohio*, 44 Ohio St.3d 82, 83 (1989), quoting *State ex rel. Hammond v. Indus. Comm.*, 144 Ohio St. 477, 481 (1945). The Supreme Court of Ohio has acknowledged that R.C. 4123.52 "is, at times, a very confusing statute," and has produced "varying interpretations" due to the statutory text's "intermix[ing] [of] a general grant of continuing jurisdiction with several statutes of limitations." *State ex rel. Drone v. Indus. Comm.*, 93 Ohio St.3d 151, 153 (2001) (stating that R.C. 4123.52's "prohibition against retroactively 'awarding' compensation in excess of two years is also a potential source of trouble"). Given the recognized confusion regarding the nature of the limitation on back awards of compensation in R.C. 4123.52(A) and considering that the limitation has been construed by the Supreme Court and this court, some discussion of those decisions is warranted.

{¶ 58} In *Gen. Refractories*, the Supreme Court of Ohio construed the temporal limitation in R.C. 4123.52(A) on back awards of compensation. The claimant in that case requested the allowance of an additional condition. In the March 23, 1982 medical report supporting the additional condition, the physician stated that the additional condition "may be due to the industrial injury of December 1, 1981, and would prevent appellee from returning to work until approximately May 3, 1982." *Id.* at 82. On June 23, 1983, the claimant filed a motion with the commission seeking allowance of the additional condition. Following the commission's order granting the additional condition, the claimant filed another motion on May 15, 1985 requesting to be awarded TTD compensation from March 16, 1982 through August 15, 1985. After a hearing, the commission granted the request for compensation and construed the claimant's June 23, 1983 motion seeking an additional allowance as an application for compensation. The employer sought relief in mandamus, arguing that because the claimant did not file his application for an award of TTD

compensation until May 15, 1985, he was not entitled to compensation for the period March 16, 1982 to May 15, 1983 pursuant to R.C. 4123.52.

{¶ 59} On appeal from the denial of the request for mandamus, the Supreme Court of Ohio considered the issue of whether the claimant's motion for the allowance of an additional condition should be construed as an application for compensation within the meaning of R.C. 4123.52. The employer argued that since the claimant did not specifically request compensation in the motion for allowance, such motion could not be construed as an application for compensation. Noting that "R.C. 4123.52 does not state how an application for compensation must be made," the court found that "[t]he fact that the application in question did not expressly request compensation is not conclusive of whether it was for compensation." *Gen. Refractories* at 83. Rather, whether something qualified as an application for compensation under R.C. 4123.52 was to be "determined not only from its contents, but also from the nature of the relief sought and how the parties treated the application." *Id.* The court based its position on the statutory text and the liberal interpretation of the Workers' Compensation Act in favor of the injured worker under R.C. 4123.95.

{¶ 60} Applying those principles to the facts of the case, the court noted the employer indicated its "inability 'to consider the payment of compensation benefits' was predicated on its presumption that [the requested additional condition] was a nonallowed condition." *Id.* at 84. Based on this, the court found that "it appears obvious, as the commission and the court of appeals found, that the parties treated the application for allowance of the additional condition as an application for an additional award of compensation." *Id.* Furthermore, the court found the facts present in that case were "distinguishable from a situation where the application requesting the 'back' award is predicated on the original allowed condition and there is no filing prior to the application in question which could in any way be construed as an application for compensation within the meaning of R.C. 4123.52." *Id.* Therefore, the court found the commission did not err in deciding that the motion for allowance of an additional condition could be construed as an application for TTD compensation pursuant to R.C. 4123.52.

{¶ 61} The court revisited its *Gen. Refractories* decision in *State ex rel. Ford Motor Co. v. Indus. Comm. of Ohio*, 65 Ohio St.3d 17 (1992). In *Ford Motor*, the claimant filed a

motion for allowance of an additional condition on November 25, 1980. Accompanying the motion was the report of claimant's physician, who opined that the claimant's "multiple sclerosis had been aggravated by her industrial injury and stated that her 'progress remains guarded.' " *Ford Motor* at 18. The physician "did not indicate that [the claimant] (1) was not working, (2) could not perform her former duties at [the employer], or (3) had any residual disability." *Id*. After "[p]rotracted litigation" that ultimately resulted in recognition of the claimant's condition, the claimant filed a motion on March 20, 1984 for TTD compensation from August 20, 1979 and ongoing based on the newly allowed condition. The commission denied TTD compensation from August 20, 1979 through March 19, 1982 "under the theory that R.C. 4123.52 prohibited compensation payment for periods more than two years prior to appellant's March 20, 1984 motion for temporary total disability compensation." *Id*.

{¶ 62} The court in *Ford Motor* distinguished its decision in *Gen. Refractories*, stating that in *Gen. Refractories*, it "stressed that claimant's application for allowance of an additional condition was accompanied by medical proof of a work-prohibitive disability." *Ford Motor* at 20. Moreover, the court stated that "[m]ost significant in *Gen. Refractories* was the employer's May 4, 1982 letter denying temporary total disability compensation," which demonstrated that the employer "obviously perceived [the] claimant's March 23, 1982 letter as a compensation request or it would not have responded as it did." *Id*. The court further noted that in *Gen. Refractories*, "the proximity of claimant's last date worked to the letter and evidence in question strongly suggested that the letter stemmed from a desire for disability compensation." *Id*. Based on this, the court stated it was "reasonable to presume that the employer [in *Gen. Refractories*] knew that compensation was being sought." *Id*.

{¶ 63} Comparing the circumstances in *Gen. Refractories* with those present before it, the court in *Ford Motor* noted that "there were fifteen months between [the claimant's] last date worked and her motion for allowance of an additional condition." *Ford Motor* at 20-21. Based on the claimant's delay, the court "decline[d] to impute knowledge of temporary total disability to [the employer]." *Id*. at 21. The court acknowledged that "R.C. 4123.95 requires liberal construction in [claimant's] favor of R.C. 4123.52's 'application' for 'compensation,' " but found that such "[l]iberal construction * * * is not limitless and merely

because [the claimant] belatedly says that she intended her initial motion to be an application for compensation does not, under these facts, make it one." *Id.*

{¶ 64} Recently, this court analyzed and applied R.C. 4123.52 in *State ex rel. Spotleson v. Medlab Ohio Inc.* 10th Dist. No. 21AP-362, 2023-Ohio-2464. In that case, the claimant submitted C-84 forms dated February 25, 2017, March 25, 2017, April 25, 2017, May 25, 2017, June 25, 2017, and July 25, 2017. No further C-84 forms were submitted until February 27, 2020. On that date, the claimant submitted a C-84 form and C-86 motion requesting TTD compensation from February 28, 2017 through February 27, 2020. Noting "R.C. 4123.52 is explicit in its terms," this court found that "even accepting that the commission should liberally construe the type of documents that constitute an application, there is no room for interpretation as to the date that relator filed her C-84 form and C-86 motion." *Spotleson* at ¶ 10. The court held that "because the only application for compensation was the February 27, 2020 C-86 motion, the two-year limitation period in R.C. 4123.52 precluded the SHO from granting TTD compensation from February 28, 2017 through February 26, 2018." *Id.*

{¶ 65} Thus, as outlined in *Gen. Refractories* and further explained in subsequent cases, in addressing whether a documentary submission constitutes an application within the meaning of the statutory limitation provided in R.C. 4123.52(A), it is necessary to consider four factors: "(1) the document's contents, (2) the nature of relief sought, (3) how the parties treated the document, and (4) the liberal construction mandate of R.C. 4123.95." *Drone*, 93 Ohio St.3d at 153.

{¶ 66} Relator argues that the two-year limitation in R.C. 4123.52(A) does not apply in this case because relator "complied with the provision of R.C. 4123.52 relating to applications for compensation and invoked [the commission's] jurisdiction by submitting his Certified FROI on December 13, 2010—merely one month after his November 16, 2010 work injury." (Relator's Brief at 15.) As a result, relator argues "the rest of the claim fell within the Commission's *continuing* jurisdiction defined under the rest of R.C. 4123.52(A)." (Emphasis sic.) (Relator's Brief at 15.) Relator argues that "[i]n effect, the SHO ruled that even if proper notice of *an injury* had been provided pursuant to R.C. 4123.84, any request for benefits arising out of a flow-through condition would still be

limited by the two-year limitations period." (Emphasis sic.) (Relator's Brief at 12.) Relator's interpretation of R.C. 4123.52(A) is inaccurate.

{¶ 67} Initially, the magistrate finds relator's arguments regarding R.C. 4123.84 to be unclear. R.C. 4123.84 contains a "notice requirement * * * for initiating claims generally." *Specht v. BP Am., Inc.*, 86 Ohio St.3d 29, 30 (1999). "The purpose of R.C. 4123.84 is to provide prompt notice to the BWC and self-insured employers of claims and potential claims from injured workers." *State ex rel. Holland v. Indus. Comm. of Ohio*, 10th Dist. No. 10AP-238, 2011-Ohio-465, ¶ 6. *See Mewhorter v. Ex-Cell-O Corp.*, 23 Ohio St.3d 13, 14-15 (1986), quoting Nackley, *The Initial Filing Period in Ohio Workers' Compensation Law*, 7 N.Ky.L.Rev. 33, 34 (1980) ("It has been recognized that the purpose of the initial filing period of R.C. 4123.84 * * * 'is to enable the employers to protect themselves by prompt investigation of the injuries. It is primarily a notice requirement. Thus, it may be distinguished in purpose from general statutes of limitations which serve to protect against "stale claims" or "faded memories" and to gain the "repose" of society.' "). Complying with the notice requirement of R.C. 4123.84 does not obviate the necessity of complying with the limitation in R.C. 4123.52(A) to prevent an application for an award of compensation from being time-barred.

{¶ 68} Regardless, relator's argument regarding his December 13, 2010 FROI is misplaced. Relator is correct that he invoked the commission's jurisdiction by filing the FROI. However, relator goes further to argue that "[b]ecause [his] request for TTD was premised upon a residual injury in his hip arising out of the same work injury on November 16, 2010, there was no need to make another application within two years of any particular date so long as the initial claim otherwise remained allowed." (Relator's Brief at 16.) Relator argues that because he "has not sought payment of benefits that accrued *prior* to the date of his application in 2010," his "request for TTD beginning December 5, 2018, would thus have been within the statute of limitations." (Emphasis sic.) (Relator's Brief at 16.)

{¶ 69} As this court has stated, "R.C. 4123.52 is explicit in its terms." *Spotleson*, 2023-Ohio-2464, at ¶ 10. The temporal limitation in R.C. 4123.52(A) prevents the commission from making an award of compensation for a back period in excess of two years prior to filing of the *application for compensation*. Following the filing of the FROI, relator sought and received TTD compensation. That compensation was terminated by the April

24, 2014 DHO order and such termination was affirmed in the May 31, 2014 SHO order. Relator's FROI does not prevent the application of the statute of limitations in R.C. 4123.52(A) to his request for TTD compensation beginning December 5, 2018.[4]

{¶ 70} In his reply brief, relator argues that "the application for a new allowance plainly satisfies the limitations period in R.C. 4123.52(A)." (Relator's Reply Brief at 14.) Applying the *Gen. Refractories* factors, the record does not support finding that relator's December 11, 2018 C-86 motion requesting the allowance of the condition of "Post Traumatic Arthritis Left Hip" constitutes an application within the meaning of the two-year statute of limitation in R.C. 4123.52(A). Rather, the facts of this matter are more akin to those in *Ford Motor*.

{¶ 71} Unlike in *Gen. Refactories*, in which the application for allowance of an additional condition was accompanied by medical proof of a work-prohibitive disability, relator's December 11, 2018 C-86 motion and the accompanying medical evidence contained no mention of an inability to work or otherwise indicated relator would be seeking additional compensation. Rather, the motion only pointed to the C-9 and office notes of Dr. Wilber and other previously submitted medical records. Dr. Wilber did not describe an inability to work in those records. In the C-9, Dr. Wilber indicated the additional condition that was recommended to be allowed and stated that such condition was "[d]irectly related to injury." (Stip. at 71.) Dr. Wilber's office notes indicated that relator "remains active, trying to go to the gym, but still has chronic pain." (Stip. at 73.)

{¶ 72} Nothing in the record demonstrates that Zenith treated the motion for the allowance of the condition as an application for additional compensation. No transcripts appear in the record from the hearings on the additional allowance before either the DHO or SHO. As such, it is not possible to determine whether the parties' interactions at those hearings reflected consideration of the motion as an application for additional compensation.

{¶ 73} Moreover, the timing of the motion for allowance of the additional condition does not provide an indication that it was being used as an application for compensation.

---

[4] In his reply brief, relator cites to *Irwin v. State Valley Hosp. Assoc.*, 7th Dist. No. 97 JE 9, 1999 Ohio App. LEXIS 4113 (Aug. 30, 1999), in support of his argument that the "two-year limit applies only to the original claim for the workplace injury." (Relator's Reply Brief at 12.) This case is not controlling over the question presented in this matter, and it does not support relator's proposition.

Relator last worked on November 16, 2010. Prior to the motion for allowance of the additional condition, the most recent MEDCO-14 in the record was signed by Dr. Wilber on June 17, 2013 and provided that relator was temporarily not released to work from November 16, 2010 to November 4, 2013. Relator's TTD was terminated by the April 24, 2014 DHO order and May 31, 2014 SHO order. Relator did not seek the allowance of the additional condition until December 11, 2018, over four years after the orders terminating TTD compensation. Based on the significant delay between the last day that relator worked or received TTD compensation and the filing of the motion for the allowance of the additional condition, it is not reasonable to impute knowledge of any request for TTD compensation to Zenith from relator's December 11, 2018 motion. *See Ford Motor* at 21.

{¶ 74} Thus, even considering the liberal construction mandate of R.C. 4123.95, it is not possible to find relator's December 11, 2018 C-86 motion for the allowance of the condition of post-traumatic arthritis left hip constituted an application for TTD compensation within the meaning of R.C. 4123.52(A). The record reflects that TTD compensation for the period in question was not requested until the September 7, 2021 C-86 motion and C-84 request. Therefore, the commission did not err by applying the statute of limitation in R.C. 4123.52(A) to find relator was precluded from receiving an award of TTD compensation from December 5, 2018 through September 6, 2019.

*2. Whether It Was Error to Deny TTD Compensation Pursuant to R.C. 4123.56(F)*

{¶ 75} Next, relator argues the SHO committed clear mistakes of fact and law by rejecting relator's request for TTD compensation based on the newly allowed condition of post-traumatic arthritis in the left hip.

{¶ 76} In the January 6, 2022 order, the SHO "denie[d] temporary total disability for the requested period [December 5, 2018] through the present as [relator] *has no wages for replacement* and is therefore, not eligible for the requested compensation pursuant to R.C. 4123.56(F)." (Emphasis added.) (Stip. at 117.) Furthermore, the SHO acknowledged the additional allowance of post-traumatic arthritis left hip recognized on July 7, 2021, but found "the additional allowance alone, *absent evidence of wages during the requested period of disability*, does not qualify [relator] for the requested temporary total disability." (Emphasis added.) (Stip. at 118.) Thus, the SHO found relator was "not eligible for the requested [TTD] compensation pursuant to R.C. 4123.56(F)." (Stip. at 117.) Contrary to the

SHO's findings, R.C. 4123.56(F) does not require the claimant to have wages for replacement at the time of the filing of an application for TTD compensation.

{¶ 77} In *Autozone*, this court considered the meaning and application of R.C 4123.56(F) to applications for TTD compensation. In that case, the claimant was terminated after suffering a workplace injury, but before he sought TTD compensation. Following his application for TTD compensation, the claimant underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the claimant was unable to work until further evaluation. A commission SHO granted the claimant TTD compensation for the period between the claimant's surgery and his hearing before the SHO.

{¶ 78} In the mandamus action brought by the employer, this court considered the meaning and application of R.C 4123.56(F) to requests for TTD compensation. The employer argued the claimant was ineligible for TTD compensation because he " 'had no [l]ost [W]ages.' " (Brackets sic.) *Autozone*, 2023-Ohio-633, at ¶ 32. The employer contended that "as a matter of law an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages." *Id.* Examining the text of the statute as a whole, the court stated:

> Read within the context of the statute, it is clear the legislature did not intend to disqualify any person not working without regard for whether the reason he or she is not working is attributable to the workplace injury. Pursuant to R.C. 4123.56(A), claimants who are working are not eligible to receive TTD compensation. To accept the employer's position that claimants who are not working are likewise disqualified would render the statute meaningless.

*Id.* at ¶ 31. The court emphasized that "not working—alone—is not dispositive," but instead, the statute "requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease." *Id.* at ¶ 33. "So long as that causal link is established, and [the claimant] is otherwise qualified, the claimant is eligible for TTD compensation." *Id.*

{¶ 79} The employer also argued the court "should analyze the effect of the [claimant's] termination and whether evidence exist[ed] that claimant had abandoned the workforce." *Autozone* at ¶ 34. This court rejected the employer's arguments, stating that "this is exactly the analysis the legislature expressly superseded by enacting R.C.

4123.56(F)." *Id*. The court "decline[d] to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work *only* due to an impairment arising from an injury or occupational disease." (Emphasis sic.) *Id*. at ¶ 22. Furthermore, the court stated that to "adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature." *Id*.

{¶ 80} Thus, the court found the text of R.C. 4123.56(F) to be unambiguous. Where a claimant is unable to work, the statute sets forth "two operative questions" in order for the claimant to be eligible for TTD compensation: "(1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation." *Id*. at ¶ 35.

{¶ 81} As detailed above, this court in *Autozone* expressly rejected arguments mirroring the reasoning employed by the SHO in this matter. By requiring relator to demonstrate "evidence of wages during the requested period of disability" or evidence of "wages for replacement," the SHO was, in effect, adding requirements not found in the statutory text. (Stip. at 117-18.) Neither courts nor administrative agencies such as the commission may add or delete language from the enactments of the General Assembly. *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13; *Autozone* at ¶ 22. Through this erroneous interpretation of the statutory text and by employing an analytical framework expressly rejected by the General Assembly by means of its enactment of R.C. 4123.56(F), the SHO erred in denying relator's application for TTD compensation.

{¶ 82} In determining whether an otherwise qualified claimant is eligible to receive TTD compensation under R.C. 4123.56(F), the commission must inquire as to the reason for a claimant's inability to work and make a determination regarding whether the inability to work is the direct result of an impairment arising from an injury or occupational disease or the direct result of reasons unrelated to the injury or occupational disease. *See Autozone* at ¶ 35; *State ex rel. Butler Village v. Indus. Comm.*, 10th Dist. No. 22AP-274, 2023-Ohio-3774, ¶ 46. The commission must additionally determine whether the claimant is otherwise qualified under R.C. 4123.56 to receive TTD compensation. Because it is the role of the

commission to determine in the first instance whether a claimant is eligible for TTD compensation by considering the facts and circumstances under the proper analytical framework as provided in R.C. 4123.56, it is necessary to return this matter to the commission for such determination.

**D. Conclusion**

{¶ 83} Based on the foregoing, relator has demonstrated a clear legal right to the requested relief and that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be granted such that this matter is remanded to the commission for further proceedings consistent with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.